**DOCKET NO.: 22-10668**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**MARY ANN GUZY,**

Appellant,

v.

**QBE SPECIALTY INSURANCE COMPANY,**

Appellee.

---

On Appeal from the United States District Court
for the Southern District of Florida
Case No.: 20-cv-23169-Cooke

---

**APPELLANT'S INITIAL BRIEF**

---

**TARA A. CAMPION**
**BRUCE S. ROGOW, P.A.**
1199 S. Federal Hwy., #212
Boca Raton, FL 33432
PH: 954.767.8909

**BRUCE S. ROGOW**
**BRUCE S. ROGOW, P.A.**
P.O. Box 749
Cedar Mountain, NC 28718
PH: 954.767.8909

**HERMAN J. RUSSOMANNO III**
**RUSSOMANNO & BORRELLO, P.A.**
150 West Flagler Street, Ste. 2800
Miami, FL 33130
PH: 305.373.2101

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(b), undersigned counsel hereby certifies the following is a complete list of all persons and entities known to have an interest in the outcome of this appeal:

1. Block, Jeremy Harris

2. Bruce S. Rogow, P.A.

3. Butler Weihmuller Katz Craig, LLP

4. Cabulea, Michaela

5. Campion, Tara A.

6. Cooke, Honorable Marcia C.

7. Goodman, Honorable Magistrate Jonathan

8. Guzy, Mary Ann

9. Jurgus, Tracy Ann

10. Lawrence, Jonathan Daniels

11. Lewis, William Roderick

12. Morgan, Jr., Thomas Jeremiah

13. QBE Specialty Insurance Company

14. Rogow, Bruce

15. Russomanno & Borrello, P.A.

16. Russomanno, Herman J.

17.Russomanno, III, Herman J.

18.Trivedi, Erick

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will assist the Court in parsing the Second Amended Complaint, the Appraisal Memorandum, an email by the QBE appraiser and the interrelationship between those three documents which formed the basis for the dismissal of the Complaint with prejudice, and this appeal.

<h1 style="text-align:center">**<u>TABLE OF CONTENTS</u>**</h1>

CERTIFICATE OF INTERESTED PERSONS ............................................C1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ......................................................................iv

STATEMENT OF JURISDICTION..........................................................1

INTRODUCTION ...........................................................................1

STATEMENT OF THE ISSUE..............................................................1

STATEMENT OF THE CASE AND FACTS ........................................2

    A. The Damage Claim................................................................2

    B. The Process – Memorandum of Appraisal ......................................3

    C. The Alleged Breach ................................................................6

    D. The Order Below ................................................................10

SUMMARY OF THE ARGUMENT ....................................................11

STANDARD OF REVIEW ................................................................12

ARGUMENT ................................................................................13

THE SECOND AMENDED COMPLAINT SHOULD NOT HAVE BEEN
DISMISSED WITH PREJUDICE..........................................................13

    A. The May 2020 QBE Email And The Second Amended Complaint
       Allegations ................................................................13

    B. The Motion To Dismiss Rules................................................20

CONCLUSION ...................................................................................................22

CERTIFICATE OF COMPLIANCE .....................................................................23

CERTIFICATE OF SERVICE ..............................................................................23

# TABLE OF CITATIONS

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................20

*Beck v. Deloitte & Touche*,
    144 F.3d 732 (11th Cir.1998) ...........................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct 1955 (2007).........................................................12, 20

*Bryant v. Dupree*,
    252 F.3d 1161(11th Cir. 2011) ........................................................1, 20, 21, 22

*Conley v. Gibson*,
    355 U.S. 41, 78 S. Ct. 99 (1957)........................................................................20

*Eiber Radiology, Inc. v. Toshiba America Medical Systems, Inc.*,
    673 Fed.Appx. 925 (11th Cir. 2016)...................................................................22

*Hoffman–Pugh v. Ramsey*,
    312 F.3d 1222 (11th Cir.2002) ..........................................................................12

*Mills v. Foremost Ins. Co.*,
    511 F.3d 1300 (11th Cir.2008) ..........................................................................12

*Young Apartments, Inc. v. Town of Jupiter, FL*,
    529 F.3d 1027 (11th Cir. 2008) ...................................................................12, 16

**Statutes**

Title 28 U.S.C. § 1291 ............................................................................................1

**Additional Sources**

McGraw-Hill's Dictionary of American Idioms, (2005).........................................15

## STATEMENT OF JURISDICTION

This is an appeal from an Order dismissing a second amended complaint with prejudice. The Court has jurisdiction pursuant to Title 28 U.S.C. § 1291.

## INTRODUCTION

This is an appeal from an Order granting a motion to dismiss a Second Amended Complaint with prejudice. The Order stated that "Because the Court has repeatedly allowed Ms. Guzy to amend her complaint to no avail, the Court will *Dismiss with prejudice.*" Doc 80 (emphasis in original). The court cited *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2011) as precedent, saying "courts need not allow amendment where parties have reportedly failed to cure deficiencies." Doc 80.

*Bryant* reversed a dismissal with prejudice: "Because we find that the district court should have allowed the plaintiffs an opportunity to amend their complaint, we reverse and remand." *Id.* at 1163. A reversal is sought here because a fair reading of the Second Amended Complaint stated a claim for relief. The court's "no avail" conclusion prematurely decided the merits, not whether a claim was stated.

## STATEMENT OF THE ISSUE

Did the District Court err in dismissing a Second Amended Complaint with prejudice where the Second Amended Complaint actually stated a breach of an insurance Appraisal Agreement?

## STATEMENT OF THE CASE AND FACTS

**A.    The Damage Claim**

QBE Specialty Insurance Company insured the residence of Mary Ann Guzy

at 1425 Brickell Avenue, unit 47 E in Miami, Florida. The insured property is a 3,300

square foot condominium apartment in the Four Seasons Hotel Residence on

Brickell Avenue. The August 20, 2021 Second Amended Complaint alleged the

origination of the loss:

> 9.      On or about December 1, 2016, Plaintiff's property was
> damaged directly and indirectly by water as a result of a broken and
> leaking pipe from the unit above her own.

Doc 56, p 4.   QBE acknowledged coverage and made several inspections of the

property. A QBE Claim Log entry on August 11, 2017 followed an earlier

inspection:

> . . . by Scott Thomas, for QBE . . . emphasizing deficiencies in QBE's
> initial loss adjustment:
>
> > Some of the items that were clearly overlooked by the
> > prior I/A: 1. The deboning [sic-debonding] floor tile. 2.
> > The electrical (both high and low voltage) 3. The
> > rosewood wall paneling (Replace vs repair) 4. The master
> > bedroom damage 5. The grade of the materials used in the
> > construction of the risk 6. The I/A omitted temporary
> > climate control 7. The carrier omitted temporary dust and
> > debris containment 8. The carrier omitted Air scrubbers
> > for worker safety and to control dust 9. The carrier omitted
> > the costs of permits and expediters 10. The carrier omitted
> > the reasonable cost of an architect 11. The carrier omitted
> > the reasonable costs of residential supervision and security
> > that will be required. The Adjuster stated this loss is

> clearly a large loss in a very high end condo unit (The Four
> Seasons on Brickell) . . . and the [sic] like any condo they
> have rules and regulations. – Ira Dobbins (08/30/2017
> 08:59 AM)

*Id*. at 4-5, ¶ 14.

Having acknowledged coverage for the loss, QBE issued payments to her for
"approximately $367,000" (*id.* at 4, ¶13), but Ms. Guzy advised QBE that the
payments "were insufficient for what was believed to be the actual value of the loss,
and Defendant indicated that no further payments would be forthcoming." *Id*. at 5,
¶16.

There was a second incident at the condominium – about "60 days after the
First Loss" but counsel "indicated there were no additional damages caused by the
Second Loss." Doc 56, p 5, ¶15. The "Second Loss" was alleged by Ms. Guzy to
have been improperly considered in the appraisal process which was ultimately
agreed upon as a method of resolving the dispute:

> It is this Second Loss which Defendant used to taint the
> process.

*Id*. ¶15(b).

## B.    <u>The Process – Memorandum of Appraisal</u>

Unable to resolve the dispute about the damage and the amount due under the
policy, in September 2018 Ms. Guzy sued QBE in state court in Miami, and QBE
removed the case to the United States District Court for the Southern District of

Florida. That lawsuit was later, by joint stipulation, dismissed without prejudice, and on December 2, 2019 the parties entered into a Memorandum of Appraisal. Doc 56-2. In relevant part, the Memorandum of Appraisal provided:

> Whereas, the Insured claims to have sustained a loss to the subject property located at 1425 Brickell Ave., Unit 47E, Miami, Florida 33131 ("Subject Property") resulting from a water leak occurring on or about December 1, 2016, which was assigned QBE Claim Number 454693N.

> Whereas, a disagreement arose between the parties hereto as to the scope and amount of damage caused by the water loss. Specifically, the parties dispute the scope and amount of the alleged dwelling damage under Coverage A, the alleged personal property damage under Coverage C, the alleged additional loss of use damage under Coverage D and the alleged damage attributed to Ordinance or Law coverage.
>
> \*\*\*
>
> **CONDITIONS**
>
> \*\*\*
>
> 2. Fail to agree on the amount of loss, either party may request an appraisal of the loss. However, both parties must agree to the appraisal. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire with 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they failed to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

> Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

Therefore, this memorandum witnesses: that in conformity to the terms and conditions of the Policy, Jeffrey C. Pellet (Appraiser for Insured) and Patrick Lewis (Appraiser for QBE) have been selected and are hereby appointed appraisers, to appraise, in accordance with the terms and conditions of said policy, the amount of loss directly caused by the water loss occurring on or about November 30, 2016.

APPRAISAL TERMS AND CONDITIONS:

1. As part of the Appraisal, each appraiser shall detail his/her position in writing as to the full cost of repair and/or replacement on an Actual Cash Value (ACV) and Replacement Cost Value (RCV) basis under the following coverages:
Coverage A – Dwelling
Coverage C – Personal Property
Coverage D – Loss of Use
Additional Coverage – Ordinance or Law

As part of the Appraisal, each appraiser will state his/her position as to any increased costs necessary to comply with the minimum standards of an ordinance or law regulating the repair, rebuilding or replacement of damaged parts of the property. The Appraisers shall identify the specific ordinance or law referenced and/or relied upon.
As part of the Appraisal, each appraiser shall address only loss or damage caused by the subject water loss on November 30, 2016, and shall not consider damage caused by any other events or non-covered perils.

As part of the Appraisal, each party reserves the right to retain an expert to assist the party's designated appraiser during the appraisal process.

  5. The Award of Appraisal shall address only loss or damage caused by the reported water loss occurring on or about November 30, 2016, and shall not consider damage caused by any other events or non-covered perils.

Doc 56-2, pps. 1-3.

## C. <u>The Alleged Breach</u>

The Second Amended Complaint presented two allegations of breach of the Appraisal Agreement: the failure to abide by the agreed 90-day time period and the failure to abide by the requirement that only the on or about November 30, 2016 water loss be addressed. The former time allegation was explicitly withdrawn in Ms. Guzy's Response in Opposition to Defendant's Motion to Dismiss Second Amended Complaint. Doc 64, p. 4, n.1.  It is only the latter claim which is at issue in this appeal.

The Second Amended Complaint alleged this conduct as the violation of the Appraisal Agreement:

  21. Despite the *agreement* to use best efforts to complete the appraisal within ninety days and *not to consider damages from other losses*, the process was characterized by lack of diligence *and the injection* of other losses:

   a. On May 21, 2020, almost three months after the ninety-day deadline had elapsed, Defendant's appraiser drafted an objection, attached as Exhibit "C", which forced the consideration of other damages, from other losses, in direct contravention to Agreement:

1. The QBE Appraiser, in drafting the objection in his email, *forced the Appraisal process to answer the fundamental question: how much damage was done by the Second Loss* in order to accept the QBE's Appraiser's allegation that "more significant event" or a "majority of the damage" was caused by the Second Loss.

2. This conduct by Defendant's appraiser *forced the Appraisal to enter into a determination of the scope and comparative size of the Second Loss*, which violates the terms of the Appraisal.

3. The parties, in entering into the Appraisal, already agreed that the source of the "majority" or "most" of the loss was already determined, it was only up to the Appraisal process to define (or "appraise") the amount of the damage.

4. Instead, the Appraisal process was intentionally *perverted for another purpose: to evaluate competing potential sources* and the degree or relative substance of each source – *something expressly prohibited by the Agreement*.

b. This context brings into focus the cause of delays by QBEs appraiser: the delays were a calculated attempt to create time pressure and facilitate a late in the game, desperate move by the QBE Appraiser to introduce other losses – this conduct underscores that QBE did not use its best efforts to comply with the ninety-day requirement to appraise and in fact sought to exploit the language indicating failing to appraise in ninety days would not be a cause of action.

Doc 56, pps. 7-8, ¶21 (emphasis supplied).

The Second Amended Complaint continued:

> 22.     On June 2, 2020, Plaintiff advised the appraisal panel that Defendant had failed to comply with the terms set forth by the Memorandum of Appraisal and that she was withdrawing from the process and terminating the authority of the panel, based on, but not limited to, the following:
>
> a.     Exceeding the time frame agreed upon at the outset of the process to be 90 days, as stated supra at 20-22.
>
> b.     The *Umpire*, at QBE's behest, *exceeding the authority granted for determination of the loss*; and
>
> c.     *The QBE appointed appraiser taking intentional* measures to deliberately delay the process and *raise matters outside the agreed terms for the panel's authority*, as stated supra at 22.

*Id*. at 9, ¶22 (emphasis supplied).

The basis for the failure to conform to the Appraisal Agreement's limited purview as set forth in Sections 1 and 5, was Exhibit C, a May 2020 email from the QBE appraiser, attached to the Second Amended Complaint. Doc 56-3. Specifically these paragraphs of the email:

> It is QBE's position that this litigation and appraisal involved only one loss event. While Mr. Yanowitch's letter cites to a leak in 2017, the only damage identified in that letter was "rewetting of carpets," which were subsequently "removed" from the property. The letter plainly states that "the second incident caused no other damage." Mr. Yanowitch clarifies that he was only providing notice of this incident in the interest of transparency—not for the purposes of opening a separate claim.

It was only after receipt of the documents from the Four Seasons and Superior Restoration that QBE learned that the second loss was not the minor incident that Peter Yanowitch described. The photographs from the restoration contractor and QBE show the exact opposite.

Based on the attached Appraisal Memorandum and documents, I believe that this appraisal panel is limited to consideration of the damage caused by the November 29, 2016 loss only. This panel cannot consider the damage caused by the second incident that occurred in February of 2017 based on the confines of the parties' agreement, the fact that there was no claim ever opened for the second loss, and the fact that the policy requirements for entering into appraisal have not been met for the second loss (i.e. dispute as to value of claim). Also, with respect to the later losses identified in the records from Four Seasons, it does not appear that QBE insured the risk during that policy period.

QBE relied on Ms. Guzy to provide sufficient information for it to adjust this loss and accurately determine the scope of damage. The fact that subsequently disclosed documents from Superior Restoration establish that the claimed damage in this loss occurred from a second more significant event was outside of QBE's control.

It is my position that 1) this appraisal may only determine the damage arising from the November 29, 2016 loss; and 2) a majority of the damage that Ms. Guzy relates to the claim at issue resulted from a second loss and other losses afterward, therefore cannot be considered as part of this appraisal.

*Id*. at 2.

The plain words of the Second Amended Complaint stated that the breach was

*vis a vis* the limitation on damages which could be considered:

30.     Defendant has breached that contract as alleged in paragraphs 20-21, to wit: intentionally causing losses and damages to be considered despite the Agreement that no other damages would be considered . . .

Doc 56, p. 11, ¶ 30.

## D.     **The Order Below**

The critical portion of the Order is this:

[T]he Court finds that QBE's objection [the Lewis May 2020 email] does not exceed the scope of the agreement. Given the Court has provided Ms. Guzy two separate opportunities to amend her complaint, the Court finds dismissal with prejudice is appropriate at this stage.

Doc 80, pps. 4-5.[1]

The Court wrote that it "agrees with QBE's interpretation of the agreement

and the May 2020 email" and continued:

[T]he appraisal agreement makes clear that the appraisal panel shall only consider losses resulting from damage occurring "on or about November 30, 2016, and shall not consider damage caused by any other events or non-covered perils." ECF No. 56-2 at 3. The May 2020 email tracks this language and scope. In that email, QBE's appraiser raises a concern that a subsequent leak event in 2017 caused additional damage to Ms. Guzy's property—beyond the damage occurring on or about November 30, 2016. ECF No. 56-3 at 1. This email thus urges the appraisal umpire *not to consider* damage that occurred after the November 30, 2016 incident. Such a request is consistent with the scope of the appraisal as stated in the appraisal agreement.

*Id*. at 6 (emphasis in original) (internal references to docket entries omitted).

---

[1]     The preceding Complaints, Doc 1-2, July 30, 2020, and Doc 22, February 1, 2021, are discussed *infra*, at pps. 21-23. While they complained of a breach of the Appraisal Agreement, their bare conclusory allegations were not well pled.

It is upon that interpretation of the May 2020 email – that amendment of the Second Amended Complaint could serve no useful purpose – that the court dismissed with prejudice.

We argue below that the QBE Appraiser's May 2020 email did introduce the banned subject for consideration causing there to be scrutiny and analysis of the second loss in order to determine the first loss, by exclusion of that loss. Therefore the process of determining the first loss was compromised. Thus a claim for breach of the Appraisal Agreement and the insurance policy was well stated by the Second Amended Complaint.

## SUMMARY OF THE ARGUMENT

The Second Amended Complaint stated a valid claim for relief. The court below erred in dismissing it with prejudice. The dismissal was based on the court's perception that an email from the QBE insurance company appraiser that spoke in terms of not considering a second loss in an Appraisal Agreement proceeding, established that the second loss was not considered.

The Appraisal Agreement was limited to a first loss, but the QBE email introduced consideration of the second loss in order for the Umpire to discount that loss. In other words, whatever intention the QBE appraiser may have had, he tainted the process by making second loss consideration the *sine qua non* for determining the covered loss.

The court below, despite a complaint that plainly stated a claim, essentially decided the case on the merits – concluding that the appraisal process was not tainted because the QBE appraiser "urge[d] the appraiser umpire *not to consider* damage that occurred after the November 30, 2016 incident." That was error. But whether or not the appraisal process was tainted was the ultimate factual question to be determined upon a factual record, not on the complaint. Dismissal with prejudice was not proper. The Second Amended Complaint stated a claim for relief and was not a candidate for dismissal with prejudice.

## STANDARD OF REVIEW

"We review an order granting a motion to dismiss with prejudice *de novo*, applying the same standards the district court used. *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir.2002). All of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir.1998). A motion to dismiss does not test the merits of a case, but only requires that 'the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'' *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1303 (11th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007))." *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1037 (11th Cir. 2008).

# ARGUMENT

## THE SECOND AMENDED COMPLAINT
## SHOULD NOT HAVE BEEN DISMISSED WITH PREJUDICE

### A.  The May 2020 QBE Email And The Second Amended Complaint Allegations

The May 2020 QBE appraiser email to Judge Rosa Rodriguez, the appraisal

"Umpire," was not as benign as the court below saw it. While the QBE appraiser

paid lip service to the limited damage appraisal inquiry, he introduced the second

loss by giving these opinions:

> It was *only after receipt of the documents from the Four Seasons and Superior Restoration that QBE learned that the second loss was not the minor incident that Peter Yanowitch described. The photographs from the restoration contractor and QBE show the exact opposite.*

> Based on the attached Appraisal Memorandum and documents, I believe that this appraisal panel is limited to consideration of the damage caused by the November 29, 2016 loss only. This panel cannot consider the damage caused by the second incident that occurred in February of 2017 based on the confines of the parties' agreement, the fact that there was no claim ever opened for the second loss, and the fact that the policy requirements for entering into appraisal have not been met for the second loss (i.e. dispute as to value of claim). Also, with respect to the later losses identified in the records from Four Seasons, *it does not appear that QBE insured the risk during that policy period.*

> QBE relied on Ms. Guzy to provide sufficient information for it to adjust this loss and accurately determine the scope of damage. *The fact that subsequently disclosed documents from Superior Restoration establish that the claimed damage in this loss occurred from a second more significant event was outside of QBE's control.*

It is my position that 1) this appraisal may only determine the damage arising from the November 29, 2016 loss; and 2) *a majority of the damage that Ms. Guzy relates to the claim at issue resulted from a second loss and other losses afterward, therefore cannot be considered as part of this appraisal*.

Doc 56-3 p. 2 (emphasis supplied).

Clearly this email injected the second loss – a loss that the QBE appraiser sought to downplay in the appraisal process:

the second loss was not the minor incident. . . .

\*\*\*

The photographs from the restoration contractor and QBE show the exact opposite.

\*\*\*

. . . it does not appear that QBE insured the risk during that policy period

\*\*\*

The fact that subsequently disclosed documents from Superior Restoration establish that the claimed damage in this loss occurred from a second more significant event was outside of QBE's control

\*\*\*

(2) a majority of the damage that Ms. Guzy relates to the claim at issue resulted from a second loss and other losses afterwards, therefore canot be considered part of this appraisal.

Doc 56-3, pps. 1-2.

Thus, by injecting the second loss, and doing so in a way that minimized the size of the December 1 covered loss, the email assured that the appraisal and Umpire had to address the second loss – an inquiry that was inconsistent with the Appraisal Agreement's limited inquiry.

To measure the amount only of the covered loss required intentional knowledge of and exclusion of the second loss. By saying that "only loss or damage

caused by the reported water loss occurring on or about November 30, 2016 and shall not consider damage caused by any other events on non covered perils" (Doc 56-2, p. 3), loss from the second incident had to be considered, in order to in effect, separate the wheat from the chaff.

The appraisal had to consider, and then discard, the second loss evidence; the first loss was the only loss, but to do that, the second loss had to be seen and discounted. The QBE May 2020 e-mail confirmed the obligation, and the need, to look at the second loss damage in order to judge which losses were from the first incident and which were from the second incident. In order to "address only loss or damage caused by the subject water loss on November 30, 2016, and shall not consider damage caused by any other events or non-covered perils" (Doc 56-2, p. 2), the appraisal had "[t]o separate what is useful or valuable from what is worthless." McGraw-Hill's Dictionary of American Idioms, p. 595 (2005) (i.e., "*separate the wheat from the chaff*").

The May 2020 QBE Appraiser email recognized that separating the wheat from the chaff was necessary, and even showed equivocation about how that could occur: "I believe that this appraisal panel is limited. . . ." But in order to do that which he believed, he had to confront that which triggered the problem: "other losses afterward, therefore cannot be considered." Doc 56-3, p. 2. In order to discard

consideration of other losses, the appraisers and Umpire had to consider them and then discount them.

Therefore they did that which the Appraisal Memorandum prohibited.

The Second Amended Complaint pleaded just that in paragraph 21, alleging the QBE Appraiser "forced the Appraisal process to answer the fundamental question: how much was done by the Second Loss;" "forced the Appraisal to enter into a determination of the scope and comparative size of the Second Loss;" "to evaluate connecting potential sources . . . something expressly prohibited by the Agreement." Doc 56, pps 7-8 (see pps. 10-14, *supra*, quoting in full the relevant subparagraphs of the Second Amended Complaint).

The Second Amended Complaint clearly articulated the problem the May 2020 QBE email presented. "A motion to dismiss does not test the merits of a case, but only requires that 'the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above the speculative level.'" *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1037 (11th Cir. 2008) (internal citations omitted). Dismissal with prejudice was not called for here.

A comparison with the earlier Complaint or the Amended Complaint reveals their failures to cogently assert the wheat from the chaff problem caused by the QBE Appraiser email. Apparently those deficiencies influenced the court's thinking when

it considered the Second Amended Complaint. Those pleadings (Doc 1-2; Doc 22)

alleged only this:

> 16.     A Memorandum of Appraisal was drafted by the parties and entered into on December 4, 2019, wherein it memorialized the terms for the appraisal process and the understanding of what was to be presented therein.

> 17.     On June 2, 2020, Plaintiff advised the appraisal panel that it had failed to comply with the terms set forth by the Memorandum of Appraisal and that she was withdrawing from the process and terminating the authority of the panel, based on, but not limited to, the following:

>> a.     Exceeding the time frame agreed upon at the outset of the process to be 90 days;
>> b.     The umpire exceeding the authority granted for determination of the loss; and
>> c.     The QBE appointed appraiser taking intentional measures to deliberately delay the process and raise matters outside the agreed terms for the panel's authority.

> 18.     On that same date, the Umpire, Judge Rosa Rodriguez (ret.), acknowledged the termination of the appraisal, declared that she viewed the conclusion "as a real failure" and, despite asking the parties to consider the various reasons why a delay occurred, stated "[a]s the umpire I take full responsibility."

> 19.     Any further actions by any members of the panel after that date, after material terms of the Memorandum of Appraisal had been breached, including the implied assurance of fundamental fairness, were done without authority and have no effect.

Doc 1-2, pps. 4-5. That Complaint did not zero in on the language of the QBE email

and its effect on compromising the appeal process.

The Amended Complaint was slightly better, quoting portions of the email, but not pinpointing the problem:

> 16. A Memorandum of Appraisal was drafted by the parties and entered into on December 4, 2019, wherein it memorialized the terms for the appraisal process and the understanding of what was to be presented therein.
>
> 17. On June 2, 2020, Plaintiff advised the appraisal panel that it had failed to comply with the terms set forth by the Memorandum of Appraisal and that she was withdrawing from the process and terminating the authority of the panel, based on, but not limited to, the following:
>
> > a. Exceeding the time frame agreed upon at the outset of the process to be 90 days;
> >
> > b. The umpire exceeding the authority granted for determination of the loss; and
> >
> > c. The QBE appointed appraiser taking intentional measures to deliberately delay the process and raise matters outside the agreed terms for the panel's authority.
>
> 18. On that same date, the Umpire, Judge Rosa Rodriguez (ret.), acknowledged the termination of the appraisal, declared that she viewed the conclusion "as a real failure" and, despite asking the parties to consider the various reasons why a delay occurred, stated "[a]s the umpire I take full responsibility."
>
> 19. Any further actions by any members of the panel after that date, after material terms of the Memorandum of Appraisal had been breached, including the implied assurance of fundamental fairness, were done without authority and have no effect. The specific terms and provisions of the Memorandum of Appraisal that were breached include:

a.  "Patrick Lewis (Appraiser for QBE) … selected and [is] hereby appointed … to appraise, in accordance with the terms and conditions of said policy, the amount of loss directly caused by the water loss occurring on or about November 30, 2016." (Page 2, Paragraph 1)

b.  "As part of the Appraisal, each appraiser shall address only loss or damage caused by the subject water loss on November 30, 2016, and shall not consider damage caused by any other events or non-covered perils." (Page 2, "Appraisal Terms and Conditions", Section 1)

c.  "The Award of Appraisal shall incorporate by reference and attach a detailed line item estimate or other supporting documentation which identifies the basis for the findings under Coverages A, C, D and Additional Coverage - Ordinance or Law on an ACV and RCV basis, where appropriate." (Page 2, "Appraisal Terms and Conditions", Section 2)

d.  The Award of Appraisal shall address only loss or damage caused by the reported water loss occurring on or about November 30, 2016, and shall not consider damage caused by any other events or non-covered perils. (Page 2, "Appraisal Terms and Conditions", Section 5)

e.  The parties agree that they and their appraisers shall make their best efforts to cooperate and to appraise the property identified herein as expeditiously as possible to complete the appraisal within 90 days of the effective date of this agreement. To timely complete the appraisal process, the parties appraisers shall be given access to the property at the earliest mutually convenient date. The parties agree that the inability to complete the appraisal within ninety (90) days shall not invalidate or otherwise be considered to be a breach of this agreement. (Page 2, "Appraisal Terms and Conditions", Section 8)

Doc 22, pps. 3-4.

The Second Amended Complaint was decidedly more to the point that the QBE Appraiser's email necessarily led to the appraisal process doing that which it was not supposed to in reaching a fair appraisal; that separating the wheat from the chaff required consideration of the *verboten* second loss.

The motion to dismiss the Second Amended Complaint should have been denied.

## B. <u>The Motion To Dismiss Rules</u>

The Motion to dismiss rules are oft repeated. While *Conley v. Gibson*, 355 U.S. 41 (1957) has been somewhat circumscribed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the bottom lines are similar. The complaint must be viewed in the light most favorable to the plaintiff; the plaintiff's well pleaded facts are accepted as true; they "must contain sufficient factual matter accepted as true to 'state a claim' to relief that is plausible on its face." *Iqbal* at 678, quoting *Bell Atlantic Corp*. at 570.

This Court has said that while "'a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice,'" (citation omitted) amendments "need not, however" be allowed:

(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice

to the opposing party; or where amendment would be futile. See *Forman v. Davis*, 371 U.S. 178 (1962).

*Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

The analysis in *Bryant* and F.R.C.P. Rule 15's "leave shall be freely given when justice so requires," support the reversal of the dismissal with prejudice entered below. We argue that the Second Amended Complaint did state a claim for relief. The district court's reliance on *Bryant v. Dupree* seemingly focused on the "futility" component of that decision: "QBE's objection does not exceed the scope of the agreement." Doc 80, pp. 4-5. Thus the court was actually ruling on the merits, deciding that the second loss was not considered.

The heart of the matter for the court below was that because the QBE adjuster's email spoke in terms of using only the first loss, QBE did not breach the Appraisal Agreement. His "belief" that "[t]his panel cannot consider the damage caused by the second incident," that "the claimed damage in this loss occurred from a second more significant event [ ] outside of QBE's control;" that "a majority of the damage that Ms. Guzy relates to the claim at issue resulted from a second loss and other losses afterward, therefore cannot be considered as part of this appraisal" (see pps. 17-18, *infra*), was taken by the court to be a message supporting consistency with the terms of the Agreement. And perhaps it was meant to be that, but in order to convince the Umpire, it required the Umpire to consider the second loss evidences in order to discount them.

This is not a *Bryant* case. This is not an *Eiber Radiology, Inc. v. Toshiba America Medical Systems, Inc.*, 673 Fed.Appx. 925 (11th Cir. 2016) case. Dismissal with prejudice would not "have unduly protracted the proceeding below and promoted judicial inefficiency." *Id.* at 930. Quite the opposite: allowing the Second Amended Complaint to proceed would have brought the case to a conclusion based upon developed facts, rather than the court's view that because the QBE appraiser wrote that only the first loss should be considered, the second loss was. Whether it was is a question of ultimate fact.

## CONCLUSION

For the foregoing reasons, the decision below should be reversed and remanded with instructions to deny the Motion to Dismiss the Amended Complaint. Ms. Guzy's claim should be allowed to proceed.

Respectfully submitted,

HERMAN J. RUSSOMANNO III
FL Bar No.: 21249
**RUSSOMANNO & BORRELLO, P.A.**
150 West Flagler Street, Ste. 2800
Miami, FL 33130
PH: 305.373.2101
Herman2@russomanno.com

*/s/ Bruce S. Rogow*
BRUCE S. ROGOW
FL. Bar No.: 067999
**BRUCE S. ROGOW, P.A.**
P.O. Box 749
Cedar Mountain, NC 28718
PH: 954.767.8909
brogow@rogowlaw.com

TARA A. CAMPION
FL. Bar No.: 90944
**BRUCE S. ROGOW, P.A.**
1199 S. Federal Hwy., #212
Boca Raton, FL 33432
PH: 954.767.8909
tcampion@rogowlaw.com

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this Initial Brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B)(i) and contains 5,507 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2022, I electronically filed the foregoing Initial Brief with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Bruce S. Rogow*